## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DELTA LIMITED** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Civil Action No. 04-2106 (RCL)** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **U.S. CUSTOMS AND BORDER** | ) | |
| **PROTECTION BUREAU** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on defendant's motion for summary judgment and plaintiff's opposition thereto.  Also before the Court is plaintiff's cross-motion for summary judgment and defendant's opposition thereto.  Upon consideration of the filings, the entire record herein and the relevant law, the Court will grant defendant's motion for summary judgment as to all redactions and withholdings except those documents withheld or redacted based solely on Exemption 4.  The Court will also deny plaintiff's cross-motion for summary judgment on all withholdings and exemptions except those documents withheld based solely on Exemption 4, as to which the Court will grant summary judgment for plaintiff.

## I.    Procedural Posture

This case originated when plaintiff Delta Limited ("Delta") filed a request with defendant, United States Customs and Border Protection Bureau ("CBP") on September 3, 2003 and September 4, 2003 under the Freedom of Information Act ("FOIA") seeking "all information relied upon by Customs for the seizure in [Customs Case Number 2003-2704-000603]."

(Declaration of Joanne Roman Stump from February 11, 2005 "Stump Decl. I" Ex. C.)  Plaintiff

further requested "the manuals, guidelines, directives, etc. relied upon by Customs,...all records

and or information that proves that [sic] alleged violations in this case." (Id.)  Plaintiff filed an

identical request in regards to case number 2003-2704-000768. (Id.)  Plaintiff's request was

initially denied by the Fines, Penalties and Forfeitures ("FP&F") Officer for CBP, upon which

plaintiff appealed the FP&F Officer's administrative decision. (See Pl.'s Mot. from February 14,

2005 at 2.)  Dissatisfied with CBP's response, plaintiff filed the instant suit on December 3,

2004. (See Plaintiff's Complaint "Compl.")   Defendant then subsequently filed a motion for

summary judgment on February 14, 2005 (Def.'s Mot. from February 14, 2005) along with

defendant's filing of a Vaughn index (Def.'s February 14, 2005 Notice of Filing Vaughn Index

"Vaughn Index").  This was followed by a memorandum in opposition filed by plaintiff. (See

Pl.'s Mem. from March 8, 2005.)  Plaintiff then filed a cross-motion for summary judgment

(Pl.'s Mot. from March 8, 2005), which was followed up by defendant's memorandum in

opposition to plaintiff's motion (See Def.'s Mem. from March 18, 2005), with a subsequent reply

by plaintiff (See Pl.'s Mem. from March 28, 2005).

## II.  Background

Plaintiff is Delta Limited, an exporter of merchandise from China. (Compl. ¶ 4.)

Defendant is U.S. Customs and Border Protection Bureau ("CBP") of the Los Angeles/Long

Beach Seaport, an agency of the United States. (Id. ¶ 5.)  On May 13, 2003, CBP seized

merchandise from Delta (Container Nos. TPCU5913308 and ECMU8014) at the Los Angeles-

Long Beach harbor. (Id. ¶¶ 6-7.)  On September 3 and 4, 2003, Delta filed a FOIA request with

CBP.  Delta claimed it needed "documents from Customs...relied upon to make the seizures and

to prepare a petition for release pursuant to 19 U.S.C. §1618." (Id. ¶¶ 8-9.)  Plaintiff's FOIA

request was initially denied by the FP&F Officer. (See Stump Decl. I Ex. E.)  Plaintiff then

appealed the FP&F Officer's administrative decision to the CBP's Disclosure Law Branch of the

Office of Regulations and Rulings. (Id. Ex. F.)  On October 9, 2003, plaintiff renewed its FOIA

request for records relating to case nos. 2003-2704-000603 and 203-2704-000768 along with an

"Appointment and Authorization of Attorney" on behalf of Delta (Id. Ex. J).  This authorization

was not included in the initial FOIA request by plaintiff, as it was executed twelve days after the

initial FOIA request was made which resulted in the first denial.

On December 19, 2003, CBP's Port Director informed plaintiff that fifty (50) responsive

documents were exempt from release pursuant to 5 U.S.C. §§ 552(b)(2), (b)(4), (b)(5) and/or

(b)(7)(C), and were withheld in their entirety.[1]  (See id. Ex. K.)  Plaintiff then appealed the Port

Director's administrative decision to CBP's Disclosure Law Branch of the Office of Regulations

and Rulings on January 5, 2004. (See id. Ex. L.)  Joanne Roman Stump, a  CBP official, initially

denied plaintiff's administrative appeal on August 25, 2004 (Id. Ex. N), but later Ms. Stump

reviewed the records, as well as the withholdings and redactions and determined that 27 pages of

the 51 should be released in part, and that the remaining 24 were properly withheld in their

entirety. (Id. at 20-21.)

According to the index produced by defendant pursuant to Vaughn v. Rosen, 484 F.2d

820 (D.C. Cir. 1973) (see Def.'s February 14, 2005 Notice of Filing Vaughn Index "Vaughn

Index") as well as the declaration by Joanne Roman Stump (see Stump Decl. I), the fifty

---

[1]Defendant notified plaintiff that fifty (50) documents were responsive to the FOIA
request, though fifty-one (51) documents were actually withheld.

responsive documents to plaintiff's FOIA request were redacted and/or withheld in full pursuant to Exemptions under 5 U.S.C. §§ 552(b)(2), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(E).  CBP asserts that it properly applied the FOIA Exemptions to these documents.  (See Def.'s Mot. from February 14, 2005.)

Plaintiff, while not questioning the reasonableness and adequacy of defendant's search (see Pl.'s Mot. from March 8, 2005), maintains however that CBP has not demonstrated that it properly withheld information and documents under FOIA Exemptions 2, 4, 5 and 7(A).  (See Pl.'s Mot. from March 8, 2005).  Plaintiff does not dispute the information withheld by defendant pursuant to Exemptions 6, 7(C) and 7(E).  Plaintiff further contends that CBP has not disclosed all reasonably segregable information (Id. at 9), and that defendant has failed to justify its delays as required by 5 U.S.C. § 552(a)(6)(C).

## III. Analysis

## A. Defendant's Motion for Summary Judgment.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  As with Rule 12(b)(6) motions for dismissal, facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment may still be granted, however, if evidence favoring the non-moving party is merely colorable, or is not significantly probative.  Anderson, 477 U.S. at 249-50 (citations omitted).  Once the moving party files a proper summary judgment motion,

the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 250.  For a non-moving party to establish a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

**1. Standard for Summary Judgment in FOIA Actions**

For an agency to prevail on a motion for summary judgment in a FOIA action, it must prove that no genuine issue of material fact exists, viewing the facts in the light most favorable to the requester. <u>Weisberg v. U.S. Department of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency must demonstrate that "it has conducted a search reasonably calculated to uncover all relevant documents" to satisfy this burden.  <u>Id.</u> at 1485 (citations omitted).  Whether or not the agency's search is reasonably calculated depends on the adequacy of the search, not on the results, and the adequacy of an agency's search is determined on a case-by-case basis, guided by a standard of reasonableness. <u>Id.</u>  As this Court has previously noted, reiterating the deemphasis on results, "in assessing the reasonableness of a search, a court is not guided by whether the search actually uncovered every document or whether the search was exhaustive." <u>Ferranti v. Bureau of Alcohol, Tobacco & Firearms</u>, 177 F. Supp. 2d 41, 46 (D.D.C. 2001) (Lamberth, J.). In order to prove this adequacy threshold has been met, the agency may rely upon "reasonably detailed nonconclusory affidavits submitted in good faith." <u>Id.</u>

**B. Reasonableness and Adequacy of Defendant's Search**

Under the FOIA, an agency is required to make a "good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information

requested." Oglesby v. U.S. Dep't. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  When determining the adequacy of an agency's search, a court may measure the reasonableness in light of the scope of the request. Meerpol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).  In the instant case, plaintiff maintains that CBP's search was reasonable and adequate (see Pl.'s Mot. from March 8, 2005 at 2), yet plaintiff questions the methods used and systems searched by defendant in performing its search (Id. at 3).  In light of the declaration by Joanne Roman Stump, the FOIA Appeals Officer and Branch Chief of the Disclosure Law Branch, International Trade Compliance Division, Office of Regulations & Rulings with the CBP (See Stump Decl. I) as well as the supplemental declaration of Ms. Stump (See Decl. of Joanne Roman Stump from March 17, 2005 "Stump Decl. II"), it is clear that CBP satisfied its burden under the FOIA in both the adequacy and reasonableness of the agency's search.

After plaintiff submitted its request for records related to the two specific FP&F case numbers, a FOIA processor at LA FP&F "examined the seizure case files...to find each document that would be responsive to the request." (Stump Decl. I ¶ 19.)  Fifty (50) documents were found to be responsive (Id.), which were contained within the Seized Assets and Case Tracking System ("SEACATS"), which is a module within the Treasury Enforcement Computer System ("TECS") (Stump Decl. II ¶ 4).  All records from SEACATS pertaining to the seizure are included in the administrative seizure file. (Id. at ¶¶ 4-5.)  In preparation for this litigation, defendant produced Vaughn declarations and indices listing all of the responsive documents to the search, including what information was redacted or withheld.  In light of the documents produced, and the supporting declarations, it is clear that the CBP satisfied its obligation under the FOIA to provide an adequate and reasonable search.

Plaintiff also contends that "defendant has totally failed to justify its delays as required by 5 U.S.C. § 552(a)(6)(C) which has impaired Delta's ability to recover its merchandise administratively." (Pl.'s Mot. from March 8, 2005 at 11.)  "[A] lack of timeliness," however, "does not preclude summary judgment for an agency in a FOIA case. The only question for summary judgment is whether its withholdings are justified." Hornbostel v. U.S. Dept. of Interior, 305 F. Supp. 2d 21, (D.D.C. 2003) (Lamberth, J.). *See, e.g.*, Atkins v. Dep't of Justice, 1991 WL 185084 (D.C. Cir. Sept. 18, 1991)(unpub.) ("The question whether DEA complied with the Freedom of Information Act's (FOIA) time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this motion."); Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information under FOIA may be...if we are convinced appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.'") (quoting Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982)). Landmark Legal Foundation v. E.P.A., 272 F. Supp. 2d 59, 62-63 (D.D.C. 2003).

Although defendant initially withheld all responsive documents from plaintiff (see Stump Decl. I ¶ 21), this delay was a result of a technical error on the part of defendant relating to the quality of certain documents produced (Id.).  Upon recognizing this error, Ms. Stump "thoroughly reviewed each of the documents that had been withheld in response to the FOIA request, and determined that 27 pages of documents should be redacted in part and released, and 24 pages of the documents were properly withheld in their entirety." (Id.)  Essentially, once the error was recognized, defendant promptly attempted to correct the error.

Plaintiff also maintains that this delay by defendant has impaired plaintiff's ability to

recover its merchandise being held by CBP.  (Pl.'s Mot. from March 8, 2005 at 13.)  Plaintiff,

however, mistakes its separate proceeding to recover merchandise seized by CBP with the instant

case concerning the FOIA.  At issue here is not how CBP's response to a FOIA request affects

other proceedings, but rather how CBP's response to the FOIA request has complied with its

legal requirements under the FOIA.  Furthermore, if plaintiff was concerned that the CBP would

not reply to the FOIA request in time, thereby putting its merchandise in jeopardy, plaintiff need

only file a claim and cost bond pursuant to 19 U.S.C. § 1608 to require CBP to refer the case to

the United States Attorney for judicial forfeiture. (Decl. of Robert P.Thierry from March 16,

2005.)  If plaintiff had elected to pursue judicial forfeiture, "the subject merchandise [could not]

be destroyed or otherwise disposed of by CBP until there is a judgment of forfeiture from a

United States District Court, or some other resolution of the matter between the claimant and

CBP. (Id.)  This Court concludes that the search conducted by defendant was reasonable and, as

such, defendant's lack of timeliness will not preclude summary judgment in its favor.

## C. Defendant's Invocation of FOIA Exemptions

While the primary objective of the FOIA is to allow the public to obtain access to federal

agency records, "Congress realized that legitimate governmental and private interests could be

harmed by release of certain types of information, and therefore provided the specific

Exemptions under which disclosure could be refused." John Doe Agency v. John Doe Corp., 493

U.S. 146 (1989) (citations omitted).  However, as disclosure remains the purpose of the Act, the

Exemptions must be narrowly construed and the burden of demonstrating that these strictly

defined Exemptions apply to a particular case rests with the agency. Id. at 152.  An agency may

satisfy its burden "by providing the requester with a Vaughn index, adequately describing each

withheld document and explaining the Exemption's relevance." Gutman v. U.S. Department of Justice, 238 F. Supp. 2d 284, 290 (D.D.C. 2003) (Urbina, J.) (citations omitted).

In replying to plaintiff's FOIA request, defendant identified the responsive documents, and after reviewing the documents a second time, the CBP official determined that 27 pages should be redacted in part and released, and 24 pages would be withheld.  In making this determination, defendant relied on Exemptions 2, 4, 5, 6, 7(A), 7(C), and 7(E) of the FOIA. Defendant has justified its withholdings in its supporting Vaughn indices and declarations. Plaintiff has contested defendant's invocation of Exemptions 2, 4, 5 and 7(A), while not contesting defendant's invocation of Exemptions 6, 7(C) or 7(E).

**1. Defendant's Invocation of Exemption 2**

Pursuant to Exemption 2, an agency is permitted to withhold documents "related solely to the internal personnel rules and practices of the agency." 5 U.S.C. 552(b)(2).  Exemption 2 applies both to trivial internal matters, referred to as "low 2" information, and substantial internal matters, the disclosure of which would facilitate circumvention of the law, referred to as "high 2" information.  See Crooker v. ATF, 670 F.2d 1051, 1074 (D.C. Cir. 1981).  In relying on Exemption 2 in its redactions and withholdings, defendant has invoked this Exemption for both "low 2" and "high 2" information.  In a review of the redacted documents and the accompanying Vaughn indices produced, it would appear that all of the documents produced with redactions (009, 038, 039, 041 and 042) consisted of "low 2" information.  Of the documents withheld in full, documents 004, 007, 036, 044, 045, 046, 047 and 050 appear to contain "low 2" information, while portions of documents 007, 010 and 011 appear to contain "high 2" information.

9

Information considered "low 2" under Exemption 2 typically consists of internal, trivial matters.  See Dep't of the Air Force v. Rose, 425 U.S. 352, 369-70 (1976).  Courts have extended and construed this exemption to include information such as "administrative markings and notations on documents; room numbers, telephone numbers, and...employees' identification numbers...."  Hale v. United States Dep't of Justice, 973 F.2d 894, 902 (10th Cir. 1992), cert. granted, vacated & remanded on other grounds, 509 U.S. 918 (1993).  Other "low 2" information legitimately withheld under Exemption 2 also includes data such as source symbols and file numbers.  See Branch v. FBI, 658 F. Supp. 204, 208 (D.D.C. 1987) (Richey, J.).

In its redactions, defendant has invoked Exemption 2 for "low 2" information in five (5) of the documents produced.  This data was determined to consist of "internal file numbers." ( "Vaughn Index" Ex. A, Docs. 038, 039, 041 and 042.)  Defendant has also invoked Exemption 2 for document 009 redactions.  In its description of documents withheld, defendant has invoked Exemption 2 to protect certain information which it considers "internal agency procedures and filing numbers" (Vaughn Index Ex. B, Docs. 004, 007, 044, 045, 046, 047, 050), as well as "CBP internal computer screen instructions" (Id. Doc. 36).  In reviewing this information and the Vaughn indices provided, it is clear that defendant properly invoked Exemption 2 for this "low 2" information since this data appears to consist of internal reference and filing numbers.

Once it is determined whether the information is appropriately considered "low 2," the second part of the analysis asks whether there is a "genuine and significant public interest" in the information's disclosure.  Rose, 425 U.S. at 369.  While the "low 2" information redacted pursuant to Exemption 2 is useful to defendant in keeping and maintaining its records, release of such data would provide no useful information to defendant or the general public in matters

10

concerning CBP's performance in general or regarding the seizure of the items in question. Furthermore, plaintiff has indicated that it is "not interested in 'low(b)(2)' information." (Pl.'s Mot. from March 8, 2005 at 3.)  Accordingly, defendant has properly invoked Exemption 2 for this "low 2" information.

In a thorough review of Exhibit B to defendant's <u>Vaughn</u> index which details those documents withheld in full, it would appear that three (3) documents were withheld, at least in part, because certain information was considered "high 2" information. (<u>Vaughn</u> Index Ex. B, Docs. 007, 010, 011.) While not indicated as such in the <u>Vaughn</u> index, a reading of the explanations provided leads this Court to this assumption. For example, document 007, indicated as a "CBP 'Hold' Notice," contained information considered "CBP operational procedures and techniques."  (<u>Id.</u> Ex. B, Doc. 007.)  Furthermore, documents 010 and 011, indicated as "CBP internal memorandum regarding investigation relating to the seizure...[and identifying] details of the investigation, officers involved, [and] names of third parties..." were withheld because it contained information considered "internal agency operational procedures." (<u>Id.</u> ex. B, Doc. 010-011.)   All of the withheld documents also contained numerous other Exemptions.

To establish the right to withhold "high 2" information, CBP must show that (1) the withheld information is "predominantly internal" and (2) its disclosure "significantly risks circumvention of agency regulations or statutes."  <u>Crooker</u>, 670 F.2d at 1073-74; <u>Founding Church of Scientology v. Smith</u>, 721 F.2d 828, 831 (D.C. Cir. 1983).  Defendant has indicated that the information withheld consists of "such things as the administrative procedures in regard to the operational responsibilities discussed and assigned to CBP personnel (<u>e.g.</u>, storage of seized property, financial accounting for seized property and appraisement of merchandise, processing forfeiture case, etc.), how information was handled in an operational context by CBP

enforcement officers, SEACATS narrative input, and law enforcement team or operation names and nomenclature." (Stump Decl. I ¶ 27.)  Accordingly, this information is "predominantly internal" and meets the first requirement of "high 2" exemptions.  Furthermore, defendant maintains that "[d]isclosure of this information to the public would reveal procedures, guidelines and techniques utilized by the agency in an operational environment, thereby benefitting those attempting to violate the law and detection." (Id.)  Defendant maintains that disclosure of this information would "aid those who seek to circumvent CBP operations and thus [harm] the agency's effective conduct of its mission." (Id.)  As such, the second requirement of "high 2" information under Exemption 2, that disclosure "significantly risks circumvention of agency regulations or statutes," has also been met.  In light of the Vaughn indices and declarations provided by defendant, CBP properly invoked Exemption 2 to the redacted and withheld documents.

    In its cross-motion for summary judgment, plaintiff asserts that defendant has not indicated what information is "low 2" and what is "high 2," and as such, "it is impossible to identify which redactions to dispute." (Pl.'s Mot. from March 8, 2005 at 3.)  Although defendant has not specifically indicated on the redacted documents produced, or on the Vaughn indices and declarations whether the information is "high" or "low" 2, plaintiff need only reference the Vaughn indices with the declarations from Ms. Stump to determine the classification of each similar to the method this Court followed.  As a result, plaintiff's argument in this regard is moot.

    Plaintiff further asserts that "defendant has redacted [Exemption 2] information for which plaintiff has the information." (Id.)  Simply because plaintiff may already have certain documents in its possession which are considered responsive by the agency processing the FOIA request does not lessen the requirement that an agency follow the guidelines and regulations provided

under the FOIA.  An agency processing a FOIA request is not first obligated or required to check

with those requesting the information to determine if the requester already has a responsive

document in its possession.  Such actions would be burdensome and unnecessary.  Instead, CBP

need only first identify those documents responsive to the FOIA request, and subsequently

process any Exemptions that may exist.

**2. Defendant's Invocation of Exemption 4**

Exemption 4 permits an agency to withhold "trade secrets and commercial or financial

information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4); see

Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983); Gulf &

Western Inuds., Inc. v. United States, 615 F.2d 527, 529 (D.C. Cir. 1980).  Exemption 4 seeks to

ensure than the government is supplied with information in an efficient and effective manner and

protects a person who submits commercial and financial information from competitive

disadvantages that might otherwise accompany this type of information gathering.  See Critical

Mass Energy Project v. NRC, 830 F.2d 278 (D.C. Cir. 1987).  The term "commercial" for

Exemption 4 purposes is construed broadly to include information in which the submitting party

has a "commercial interest." Public Citizen Health Research Group, 704 F.2d at 1290.

Information qualifies as "confidential" in one of two ways.  Courts apply one test for

confidentiality when the government required the information's submission and apply a different

test when submission was voluntary.

When the government obliges or compels a document's submission, information

contained in the document is confidential "if disclosure of the information is likely to have either

of the following effects: (1) to impair the Government's ability to obtain necessary information in

the future; or (2) to cause substantial harm to the competitive position of the person from whom

the information was obtained." Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770

(D.C. Cir. 1974), limited by Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975

F.2d 871, 872 (D.C. Cir. 1992) (limiting the application of National Parks to FOIA requests for

financial or commercial information that a person is obliged to provide to the government.)

     In the civil action before this Court, CBP has invoked Exemption 4 in its withholding of

documents that it required of parties shipping merchandise into the United States.  "Paperwork in

a variety of forms," often referred to as "entry documents...must be filed by an importer or an

entity on its behalf with CBP in order to introduce and enter merchandise into the customs

territory of the United States." (Stump Decl. I ¶ 31).  For these documents to be considered

"confidential" and thereby properly withheld under Exemption 4, the agency withholding the

documents has the burden of showing that substantial harm by its release would be "likely." See

National Parks, 498 F.2d at 770.  CBP has not met this burden.

     Defendant has invoked Exemption 4 on twenty-three (23) documents with redactions, and

on nineteen (19) documents withheld in full. (See Vaughn Index, Ex. A-B.)  Of the documents

withheld in full, nine (9) documents (005, 019, 020, 021, 022, 023, 037, 049) are considered a

type of CBP entry document entitled "Customs Forms 7512" and contain information about the

movement of merchandise in-bond through the customs territory of the United States.  Defendant

argues that "[e]ntry documents...are categorically exempt from disclosure to third parties."

(Stump Decl. I ¶ 34.)  In making its assertion, defendant relies on two cases, Inter Ocean Free

Zone, Inc. v. United States Customs Service, 982 F. Supp. 867 (S.D. Fl. 1997) and Timken Co. v.

United States Customs Service, 531 F. Supp. 194 (D.D.C. 1981).  On a thorough reading of these

two cases, however, neither court granted a blanket exemption from the test set forth in National

Parks for "entry documents." In both cases, specific examples were set forth as to how, and to whom substantial harm would be likely by the release of the proposed exempt information. In Inter Ocean Free Zone, Inc., for example, the party which feared the likelihood of substantial harm by release of the information provided an affidavit to Customs "outlining how and why release of [the information] would likely result in competitive harm." Inter Ocean Free Zone, Inc., 982 F. Supp. at 870. This affidavit also included facts that the party requesting the information was in direct competition with the party seeking the withholding of the information. Id. No such evidence of similar competition was presented in the instant case. While CBP is not required to provide "detailed economic analysis of the competitive environment," Nat'l Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 679 (D.C. Cir. 1976), agencies such as CBP are nevertheless required to provide more than blanket conclusory statements on competitive harm. See Pac. Architects and Eng's, Inc. v. Renegotiations Bd., 505 F.2d 383, 384 (D.C. Cir. 1974). Accordingly, the information provided by CBP and its generalized assertions hardly meet the standard as set forth in National Parks for actual competition and likelihood of substantial harm.

CBP has also invoked Exemption 4 on "other sensitive commercial information." (Stump Decl. I ¶ 36.) Information contained in these redacted and withheld documents include "a variety of commercial confidential information, including entry numbers, value of merchandise, specific classification or type of merchandise, visa category, purchase order numbers, shipment routing information, IRS and bond numbers, the frequency of entry filings, and the names and identifying information of third party entities such as consignees, importers, carriers, etc. (Id. ¶ 37.) In reviewing the Vaughn indices and declarations provided, those documents which contained redactions under Exemption 4 include document numbers: 001, 003,

006, 009, 012, 013, 016, 017, 024, 025, 026, 027, 028, 029, 030, 031, 038, 040, 041, 043, and

051 from Exhibit A of the <u>Vaughn</u> index provided.  Other documents withheld in full and not

listed as "entry documents" from above include document numbers 004, 008, 015, 032, 033, 034,

035, 036, 044, 045 and 050 from Exhibit B of the <u>Vaughn</u> index provided.  As with the entry

documents withheld, defendant has also failed to meet its burden with regard to these documents

in detailing how release of the information contained in these documents would result in the

likelihood of substantial competitive harm to actual competitors.  Again, defendant merely

maintains the release of this information to a competitor "would reveal sensitive commercial and

financial information, <u>i.e.</u> from whom the merchandise was purchased, the quantity of

merchandise being imported, the value of the merchandise, the customers of exporters and a

description of the exporter's business operations and organization." (Stump Decl. I ¶ 36.)  CBP

further maintains that "[t]his is not the type of information a commercial entity would give to a

competitor."  (<u>Id.</u>)   Like the arguments made in favor of withholding the entry documents, these

generalized statements on hypothetical competitive situations are not enough to meet the detail

needed under <u>National Parks</u>.

It appears from the <u>Vaughn</u> indices and declarations produced by defendant that each of

the documents withheld or redacted pursuant to Exemption 4 was a document that is required by

CBP to be submitted - hence a "compelled" or "involuntary" submission per <u>National Parks</u>.

Furthermore, there seems to be no dispute by either party as to whether they are considered

voluntarily or involuntarily submitted.  Accordingly, this Court will treat all documents withheld

or redacted under Exemption 4 as "involuntarily" submitted documents, and thereby apply the

standard as set forth in <u>National Parks</u>.  Under the <u>National Parks</u> standard, the agency attempting

to withhold the documents has the burden of showing that disclosure will (1) "impair the

government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained." <u>National Parks</u>, 498 F.2d 765, 770 (D.C. Cir. 1974).  For the reasons set forth above, CBP has not met this burden in relation to withholdings and redactions invoked pursuant to Exemption 4.

**3. Defendant's Invocation of Exemption 5**

Exemption 5 protects disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Agencies invoking Exemption 5 most frequently rely upon the deliberative process privilege, the purpose of which "is to prevent injury to the quality of agency decisions" by allowing "the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining which its law shall be." <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 153 (1975).  Specifically, documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" are protected by this privilege. <u>Id.</u> at 150. Allowing such an exemption ultimately preserves the free flowing debate essential to an agency's decision-making process.

In applying the deliberative process privilege under Exemption 5, the documents to be withheld or redacted must be pre-decisional and deliberative. <u>See</u> <u>Mapother v. Dep't of Justice</u>, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  For a communication or document "between subordinates and superiors" to be pre-decisional, they must be "actually Antecedent to the adoption of an agency policy." <u>Jordan v. United States Dep't of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978).   For a communication or document to be deliberative, it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matter."

Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

Defendant has invoked Exemption 5 to two (2) documents which it withheld in full.

(Vaughn Index, Ex. B, Docs. 010-011).  According to the Vaughn index, these documents

contained "CBP internal memorandum regarding the investigation relating to the seizure, which

was withheld in full, as it contains the agency's internal deliberative thought process and theory

of the case concerning aspects of the investigation and processing of the underlying seizure case.

(Id. Stump Decl. I ¶ 40)  Furthermore, CBP claims that Exemption 5 was invoked with these

documents based upon "the deliberative process privilege that is incorporated into Exemption

(b)(5)...as it contains the agency's internal deliberative thought process and theory of the case

concerning aspects of the investigation and processing of the underlying seizure case." (Stump

Decl. I ¶¶ 40-41.)  CBP maintains that the "analysis contained in this document describes the

agency's theory of the case, applicable laws, and the relevant facts, and are so inextricably

intertwined that the information contained within them could not be reasonably segregated." (Id.

¶ 41.)  Plaintiff argues for the segregation of the facts and the deliberative process information in

order to obtain the factual information contained within the documents. (Pl.'s Mot. from March

8, 2005 at 7-8.)

There seems to be no dispute that Exemption 5 is applicable to the documents as they

relate to data from the deliberative thought processes.  (See Pl.'s Mot. from March 8, 2005 at 7.)

Nevertheless, plaintiff demands release of the "factual information....relied upon in the

deliberative process." (Id.)  In setting forth its demand for this information, plaintiff cites

Environmental Protection Agency v. Mink, 410 U.S. 73, 90 (1973), which argues in favor of a

"flexible, commonsense approach" to the public's access under Exemption 5 of factual

information and material appearing in Exemption 5 documents that "is severable without

compromising the private remainder of the documents."  In light of the <u>Vaughn</u> index and

declarations provided by CBP, however, it seems evident that the information contained in these

two documents is not severable.  First, the declaration from Ms. Stump indicates that the factual

information and deliberative information are "so inextricably intertwined that the information

contained within them could not be reasonably segregated." (Stump Decl. I ¶ 41.)  Secondly, in a

review of the <u>Vaughn</u> index, documents 010 and 011 were also withheld because of other

exemptions, including Exemptions 2, 6, 7(C), 7(E) and 7(A).  In light of this information, the

Court will uphold CBP's invocation of Exemption 5 to the documents in question.

**4. Defendant's Invocation of Exemption 7(A)**

Exemption 7(A) is "designed to block the disclosure of information that will genuinely

harm the government's case in an enforcement proceeding or impede an investigation."  <u>North v.</u>

<u>Walsh</u>, 881 F.2d 1088, 1097 (D.C. Cir. 1989).  To invoke Exemption 7(A), an agency must

establish that the information was compiled for a law enforcement purpose and that disclosure

would interfere with enforcement proceedings. <u>Id.</u> at 1097.  The law enforcement proceeding

must have been "a concrete, prospective law enforcement proceeding" at the time of the agency

decision to withhold.  <u>Scheer v. Dep't of Justice</u>, 35 F. Supp. 2d 9, 11-13 (D.D.C. 1999).

CBP has invoked Exemption 7(A) on twenty-two (22) documents, which include

document numbers 005, 008, 010, 011, 015, 019, 020, 021, 022, 023, 032, 033, 034, 035, 036,

037, 044, 045, 046, 047, 049, 050 from Exhibit B of the <u>Vaughn</u> index which were withheld in

full.  According to CBP, these documents contained the "names of suspects and/or witness and

specific documentary evidence collected in support of CBP's case." (Def.'s Mot. from February

14, 2005 at 22.)

In order to establish that Exemption 7(A) was properly invoked, CBP must first establish

that the information to be withheld was compiled for a law enforcement purpose. <u>See</u>, <u>e.g.</u>,

<u>North</u>, 881 F.2d at 1097; <u>Manna v. United States Dep't of Justice</u>, 51 F.3d 1158, 1164 (3d Cir.

1995).  There seems to be no question that CBP was involved in compiling this information for

law enforcement purposes.  According to CBP, the information withheld "was gathered and

compiled during the investigation of the suspected illegal activities of a third party or parties."

(Stump Decl. I ¶ 47.)  Plaintiff further acknowledged in its complaint that its merchandise was

seized by CBP on May 13, 2003, and thereafter became the subject of a CBP investigation.

(Compl. ¶¶ 5-8.)  CBP has established that the information withheld was compiled for the

Custom's law enforcement purposes.

Next, CBP must show that the withheld information, if disclosed, would interfere with

the enforcement proceedings. <u>See</u>, <u>e.g.</u>, <u>North</u>, 881 F.2d at 1097; <u>Manna</u>, 51 F.3d at 1164.  Courts

have held that the mere pendency of enforcement proceedings is an inadequate basis for the

invocation of Exemption 7(A); the government must also establish that some distinct harm is

likely to result if the record or information requested is disclosed. <u>See</u>, <u>e.g.</u>, <u>Crooker v. ATF</u>, 789

F.2d 64 (D.C. Cir. 1986).  In arguing against disclosure of this information, CBP asserts that

"[d]isclosing this information could identify the suspect(s) of the investigation and particular

evidence of suspected criminal violations." (Stump Decl. I ¶ 47.)  CBP further argues that release

of this information could "interfere with the ongoing investigation by alerting the suspects to the

investigation and identifying for the suspects the nature of the evidence that has been identified

and collected in the investigation.  Disclosure could also interfere with any related law

enforcement proceeding to the extent that it could generally inform the public as to the nature of

the evidence that is generally sought or scrutinized in this type of investigation." (<u>Id.</u>)  Release of

the information could result in harm to the ongoing investigation, and as a result, this Court finds

that CBP properly withheld the documents pursuant to Exemption 7(A).

In response, however, plaintiff argues that it "needs the facts Customs relied upon from these [third] party investigations in order to defend against the seizure of its merchandise." (Pl.'s Mem. from March 28, 2005 at 8.)  Plaintiff seems to argue that because it is the subject of the investigation, it is afforded a special right to the information withheld pursuant to Exemption 7(A).  No such right exists.  "[T]he particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." Pinnavaia v.FBI, 2004 WL 2348155, at *1 (D.C. Cir. 2004) (quoting In re Sealed Case, 121 F.3d 729, 738 n.5 (D.C. Cir. 1997)).  Accordingly, plaintiff's arguments against the invocation of 7(A) are unmerited.

**D. Segregability**

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  See Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." Powell v. United States Bureau of Prisons, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting Church of Scientology v. Dep't of the Army, 611 F.2d 738, 744 (9th Cir. 1979)).

Plaintiff argues that "defendant's declaration and Vaughn index suffer from...vagueness and [a] lack of specificity." (Pl.'s Mot. from March 8, 2005 at 9.)  Plaintiff further asserts that "[a] line-by-line search without a more detailed analysis and description is meaningless and not helpful to the plaintiff or the Court." (Id. at 10.)  Defendant counters that "[a]ll information

withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably

segregable because it is so intertwined with protected material that segregation is not possible or

its release would have revealed the underlying protected material." (Stump Decl. I ¶ 56.)

Defendant goes on to assert that "[n]o reasonably segregable non-exempt portions of documents

have been withheld from plaintiff." (Stump Decl. II ¶ 11.)

After examining the <u>Vaughn</u> indices and declarations provided by CBP, as well as the

redacted documents, it is clear that defendant has met its burden of reasonable segregation.  Most

of the documents withheld or redacted by defendant were not disclosed because of numerous

exemptions to the same document.  A thorough review of the <u>Vaughn</u> indices provided by

defendant reveal detailed, line-by-line explanations of precisely what was redacted and withheld.

(<u>See</u> Stump Decl. II ¶ 11; <u>Vaughn</u> Indices Ex. A and B.)  Furthermore, according to the FOIA

appeals officer for CBP, many of the documents were withheld in full because release of the

remaining information on the documents after appropriate redactions would "have left only mere

templates or unintelligible or meaningless words and phrases because such non-exempt

information was so inextricably intertwined with exempt material." (Stump Decl. II ¶ 12.)  As a

result, this Court finds that defendant has met its burden of reasonable segregability in its

application of the FOIA.

## IV. Conclusion

Defendant has satisfied its burden of demonstrating its search conducted in response to

plaintiff's FOIA requests was reasonably conducted and thus adequate.  Furthermore, defendant

has also satisfied its burden of proving appropriate use of the FOIA Exemptions 2, 5, and 7(A).

Defendant has not, however, satisfied its burden of proving appropriate use of the FOIA

Exemption 4.  As a result, this Court will grant defendant's motion for summary judgment as to

22

all withholding and redactions except those that rely solely on Exemption 4.  This Court will order that all withholdings and redactions that rely only on Exemption 4 be released to plaintiff.

Plaintiff's arguments raised in opposition to defendant's motion do not preclude defendant's motion for summary judgment on all withholdings and redactions with the exception of those relied solely on Exemption 4.  As a result, this Court will deny plaintiff's cross-motion for summary judgment as to all withholdings except for those based solely on Exemption 4.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, July 26, 2005.